

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 50508 | DATE | 4/12/2004 |
| CASE TITLE | Fatwallet, Inc. vs. Best Buy | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse memorandum opinion and order, the court grants the motions to dismiss of all defendants and dismisses this cause in its entirety.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | APR 12 2004 | |
| | Notified counsel by telephone. | date docketed | A6 |
| | Docketing to mail notices. | docketing deputy initials | |
| X | Mail AO 450 form. | | |
| X | Copy to judge/magistrate judge. | 4-13-04 date mailed notice | |
| LC courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

# MEMORANDUM OPINION AND ORDER

Plaintiff, Fatwallet, Inc., filed a four-count complaint against defendants, Best Buy Enterprises Services, Inc. (Best Buy), Kohl's Department Stores, Inc., and Target Corporation, seeking declaratory relief related to the alleged unconstitutionality of certain provisions of Tile II of the Digital Millenium Copyright Act (DMCA) (17 U.S.C. § 512). All three defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), contending that plaintiff, as an internet service provider (ISP), has no standing under either Article III of the Constitution or the Declaratory Judgment Act (28 U.S.C.§ 2201). Both sides have submitted evidentiary materials relevant to the motions to dismiss.

In a constitutional sense, standing involves whether a plaintiff has made out a case or controversy between himself and the defendant for purposes of Article III. Discovery House, Inc. v. Consolidated City of Indianapolis, 319 F. 3d 277, 279 (7th Cir. 2003). Put another way, it involves whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant its invocation of federal jurisdiction and to justify exercise of the federal court's remedial power on its behalf. Discovery House, Inc., 319 F. 3d at 279. The purpose of requiring a plaintiff to present an actual case or controversy such that it has a personal stake in the outcome is to assure the concrete adversity which sharpens the presentation of issues necessary for the proper resolution of constitutional questions. Perry v. Sheahan, 222 F. 3d 309, 313 (7th Cir. 2000). To ensure that personal stake, a plaintiff seeking to invoke federal court jurisdiction must demonstrate: (1) an injury that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct such that the injury may be fairly traceable to that conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. Perry, 222 F. 3d at 313. The past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing. present adverse effects. Perry, 222 F. 3d at 313.

In addition to the constitutional limitation on standing, courts also impose prudential limitations on the class of plaintiffs who may invoke federal jurisdiction such as the general rule that a plaintiff must assert his own rights and not those of a third party. Massey v. Helman, 196 F. 3d 727, 739 (7th Cir. 1999). There is a rare exception for third- party standing when the plaintiff can show a significant personal interest in the outcome of the case to satisfy Article III. Massey, 196 F. 3d at 739. When a party seeks standing to advance the constitutional rights of another, it must show that it has suffered an injury in fact and that it is the proper proponent of the particular legal right asserted. Massey, 196 F. 3d at 739.

The case or controversy requirement of Article III applies equally to declaratory judgment actions. Highsmith v. Chrysler Credit Corp., 18 F. 3d 434, 436-37 (7th Cir. 1994). Thus, to demonstrate standing for a declaratory judgment, the plaintiff must allege he sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendant's conduct. Highsmith, 18 F. 3d at 437. Further, where a declaratory judgment plaintiff files a complaint in anticipation of litigation by the defendant, a case or controversy exists if the threat of litigation is real and immediate. Norfolk Southern Railway Co. v. Guthrie, 233 F. 3d 532, 534 (7th Cir. 2000).

Keeping these various principles in mind in this case, the issue of plaintiff's standing revolves around the take-down notice and safe harbor provisions of the DMCA. Section 512 (c)(1)(C) provides immunity from monetary and injunctive relief to an ISP such as plaintiff if, upon notification as set forth in section 512 (c)(3) (which was undisputedly given here) the ISP "responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." Put simply, if the ISP responds to a take-down notice by removing the claimed offending material, then it cannot be sued for copyright infringement related to those postings.

Nothing in the DMCA, on the other hand, creates liability for the ISP beyond that which already exists under copyright law generally. An ISP suffers no adverse consequences under the DMCA for its failure to abide by the notice. It is free to thumb its nose at the notice and it will suffer no penalty nor increased risk of copyright liability.

Thus, plaintiff was in no worse a position regarding potential copyright liability for the postings of its subscribers whether it responded to the notice or not or for that matter even if the DMCA did not exist at all. In other words, the DMCA only inures to the benefit of plaintiff and visits no negative consequences upon it.

Because of the unique nature of the DMCA notice provisions and how they apply to an ISP, plaintiff cannot claim it suffered any injury or harm from the invocation of the notice provisions by defendant. It was free to ignore the notice and no harm would befall it that did not already exist irrespective of the DMCA.

That being said, if in fact an ISP chooses ro respond to the notice by taking down the challenged material, it then triggers the safe harbor provision and is insulated from potential liability for copyright infringement. Put another way, the only implication of the notice provisions of the DMCA is a positive one. Plaintiff has failed to identify any harm it has suffered as a result of its choosing to respond to the take-down notice and has therefore not shown it has standing under Article III or the Declaratory Judgment Act.

As for plaintiff's standing to press any claims on behalf of the third-party posters themselves, the lack of an actual injury by plaintiff defeats standing in that regard as well. Additionally, there is nothing that prevents the posters themselves from bringing a suit to challenge the DMCA as they are the ones potentially harmed by having there materials removed pursuant to the notice provisions of the DMCA. While they may have some interest in maintaining their anonymity, plaintiff has no standing to prosecute that interest either.

Finally, as to Best Buy, plaintiff also lacks standing related to the subpoena sent to it as it is undisputed that Best Buy never attempted to enforce the subpoena. Further, Best Buy has asserted to this court that it has no intention of doing so. The subpoena in this case lacks efficacy, and has caused no harm to plaintiff or its subscribers. Even if Best Buy had sought enforcement of the subpoena (and further assuming it was even valid, see Fed. R. Civ. P. 45(b)), it is difficult to see the harm that would befall plaintiff as opposed to its subscribers. Certainly the subscribers themselves would be in a position to challenge the subpoena. The subscribers interest in maintaining their anonymity does not invoke standing to a third-party such as an ISP to challenge the subpoena when the ISP has not suffered an injury of its own. While another federal trial court has ruled otherwise, see Recording Industry Association of America v. Verizon Internet Services, Inc., 275 F. Supp. 2d 244, 257-58 (D.D.C. 2003), rev'd on other grounds, 351 F. 3d 1229 (D.C. Cir. 2003), that decision is distinguishable as there the subpoena was served, the ISP refused to comply, and there was a motion to compel. To the extent the court held that the ISP had standing to press the claims of the anonymous posters, this court respectively disagrees.

For the foregoing reasons, the court grants the motions to dismiss of all defendants and dismisses this cause in its entirety.